# In the United States Court of Federal Claims

No. 25-290
(Filed: September 2, 2025)
(Reissued for Publication: September 18, 2025)[1]

```
***************************************
MULTIMEDIA ENVIRONMENTAL            *
COMPLIANCE GROUP JV,                *
                                    *
            Plaintiff,              *
                                    *
v.                                  *
                                    *
THE UNITED STATES,                  *
                                    *
            Defendant,              *
                                    *
and                                 *
                                    *
ACACIA7 JV,                         *
                                    *
            Defendant-Intervenor.   *
***************************************
```

*Meghan F. Leemon*, PilieroMazza PLLC, Washington, DC, counsel for Plaintiff. With whom was *Antonio R. Franco*, *Eric A. Valle*, *Emily A. Reid*, and *Kelly A. Kirchgasser*, of counsel.

*Blake W. Cowman*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant. With whom were *Camille N. Rybar*, U.S. Department of the Navy, Naval Facilities Engineering Systems Command, Southwest Office, and *Christopher J. McClintock*, U.S. Small Business Administration, Office of Litigation, of counsel.

*James M. Carter*, Pillsbury Winthrop Shaw Pittman, LLP, Los Angeles, CA, counsel for Defendant-Intervenor. With whom were *Richard B. Oliver*, *Toghrul M. Shukurlu*, and *Sarah M. Robitaille*, of counsel.

## OPINION AND ORDER

**DIETZ, Judge.**

---

[1] This Opinion and Order was filed under seal on September 2, 2025, *see* [ECF 40], in accordance with the Protective Order entered on February 21, 2025, *see* [ECF 12]. The parties were given an opportunity to identify protected information, including source selection information, proprietary information, and confidential information, for redaction. The parties filed a joint status report on September 17, 2025, with agreed upon proposed redactions. [ECF 42]. The Court accepts all proposed redactions.

Multimedia Environmental Compliance Group JV ("Multimedia") protests a decision by the United States Small Business Administration ("SBA"), Office of Hearings and Appeals ("OHA"), that found Multimedia to be an ineligible small business joint venture in connection with a solicitation for environmental compliance engineering services issued by the United States Department of the Navy ("Navy"). As a result, the contract was awarded to Acacia7 JV ("Acacia7"). In its protest, Multimedia alleges that OHA failed to apply the proper standard of review, incorrectly applied the regulations governing mentor-protégé joint ventures, and conducted a flawed assessment of their Joint Venture Agreement ("JVA"). For the reasons set forth below, the Court finds that OHA applied the proper standard of review, and that its decision has a rational basis and adheres to the applicable regulations. Accordingly, Multimedia's motion for judgment on the administrative record ("MJAR") is **DENIED**, and the government's and Acacia7's respective cross-MJARS are **GRANTED**.

I.  **BACKGROUND**

  A.  **Statutory and Regulatory Framework**

Congress enacted the Small Business Act, 15 U.S.C. § 631, *et seq.*, to "aid, counsel, assist, and protect . . . the interests of small-business concerns in order to preserve free competitive enterprise, [and] to insure that a fair proportion of the total purchases and contracts . . . for property and services for the Government . . . [are] placed with small-business enterprises, . . . ." *Id*. § 631(a). Under the statute, the SBA is responsible for promulgating "detailed definitions or standards by which a business concern may be determined to be a small business concern." *Id*. § 632(a)(2)(A). The SBA sets "size standards [that] define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for 'small business' concerns." 13 C.F.R. § 121.101(a).

When bidding on a contract designated for a small business, "[a] concern must not exceed the size standard . . . specified in the solicitation." 13 C.F.R. § 121.402(a). To calculate its size, the business concern must determine its affiliations and include the average annual receipts of its affiliates. *Id*. §§ 121.103, 121.104(d)(1). Business "entities are affiliates of each other when one controls or has the power to control the other [regardless of] whether [such] control is exercised." *Id*. § 121.103(a)(1). Additionally, "[c]ontrol may be affirmative or negative." *Id*. § 121.103(a)(3). "Negative control includes, but is not limited to, instances where a minority shareholder has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders." *Id*.

In an exception to the requirements regarding affiliations, the regulations provide that "[a] firm that has an SBA-approved mentor-protégé agreement authorized under § 125.9 . . . is not affiliated with its mentor or protégé firm solely because the protégé firm receives assistance from the mentor under the agreement." 13 C.F.R. § 121.103(b)(6). "The small business mentor-protégé program is designed to enhance the capabilities of protégé firms by requiring approved mentors to provide business development assistance to protégé firms and to improve the protégé firms' ability to successfully compete for federal contracts." *Id*. § 125.9(a). Under the program, "[a] protégé and mentor may joint venture as a small business for any government prime contract

2

. . . provided the protégé qualifies as small for the procurement." *Id.* § 125.9(d)(1). However, "[i]n order to receive the exclusion from affiliation, the joint venture must meet the requirements set forth in § 125.8(b)(2), (c), and (d)." *Id.* § 125.9(d)(1)(ii). Under § 125.8(b)(2), the JVA between the protégé and the mentor must contain certain provisions. For example, the JVA must contain a provision "[d]esignating [the] small business as the managing venturer of the joint venture, and designating a named employee of the small business managing venturer as the manager with ultimate responsibility for performance of the contract (the 'Responsible Manager')." *Id.* § 125.8(b)(2)(ii). The regulation states that "[t]he managing venturer is responsible for controlling the day-to-day management and administration of the contractual performance of the joint venture, but other partners to the joint venture may participate in all corporate governance activities and decisions of the joint venture as is commercially customary." *Id.* § 125.8(b)(2)(ii)(A).

If an offeror in a small business set-aside procurement seeks to challenge another offeror's size, it may initiate a size protest. 13 C.F.R. § 121.1001(a)(1)(i). A size "protest must be sufficiently specific to provide reasonable notice as to the grounds upon which the protested concern's size is questioned." *Id.* § 121.1007(b). Further, the protest "must be filed with the contracting officer for the procurement . . . who must forward the protest to the [appropriate] SBA . . . Area Office" *Id.* § 121.1003. After receiving the protest, "the SBA Area Office will issue a formal size determination." *Id.* § 121.1009(a)(1). "The size determination will be based primarily on the information supplied by the protestor or the entity requesting the size determination and that provided by the concern whose size status is at issue." *Id.* § 121.1009(b). However, it "may also be based on grounds not raised in the protest," and the "SBA may use other information and may make requests for additional information to the protestor, the concern whose size status is at issue and any alleged affiliates, or other parties." *Id.*

Appeals from size determinations are heard by OHA. 13 C.F.R. § 134.102(k). "The standard of review [applied by OHA] is whether the size determination . . . was based on clear error of fact or law," and the challenger "has the burden of proof, by a preponderance of the evidence." *Id.* § 134.314. The OHA "Judge will issue a decision containing findings of fact and conclusions of law, reasons for such findings and conclusions, and any relief ordered." *Id.* § 134.316(c). Once issued, "[t]he decision is the final decision of the SBA." *Id.* § 134.316(d).

B.   **Background and Procedural History**

In the instant case, the Navy issued a solicitation on June 21, 2022, for environmental engineering compliance services. AR 77-95.[2] The procurement was "set-aside 100% for small-business firms." AR 78. The solicitation stated that "[f]irms that elect to propose as a formal Joint Venture (JV) . . . shall submit their legally binding formal [JVA] with their proposal" and that "[a]ll such agreements . . . shall demonstrate the relations between firms and identify contractual relationships and authorities to bind them." AR 79. The solicitation further instructed that the joint venture must "meet[] the requirements of 13 CFR §§ 121.103 to 121.106." *Id.*

---

[2] The Court cites to the Administrative Record filed by the government and made available to the parties electronically on June 16, 2025, *see* [ECF 30], as "AR__."

Multimedia and Acacia7 each submitted proposal packages, including their respective JVAs. AR 509-59, 560-80, 730-78, 779-93. Multimedia "is a Small Business Mentor-Protégé JV between the Protégé, Nicklaus [Engineering, Inc. ("NEI")], an SBA-certified Small Business . . . and the Mentor, Wood [Environment and Infrastructure Solutions, Inc. ("WEIS")]." AR 546; AR 5395-96.[3] Multimedia "is ▇% owned by NEI and ▇% owned by WEIS." AR 5398. Stacy Gutierrez is the President, ▇ Director, and ▇% owner of NEI. AR 5400. She also "serves as Manager of the [Multimedia] JV." AR 5398. Acacia7 is also a small business mentor-protégé joint venture. AR 780. After evaluating the proposals, the Navy notified Acacia7 that it was not selected and that the Navy had selected Multimedia to perform the work. AR 1629.

On July 26, 2024, Acacia7 filed a size protest with the contracting officer challenging Multimedia's eligibility for the award. AR 1933-38. Shortly thereafter, the contracting officer referred the size protest to the SBA Area Office. AR 1930-32. In its protest, Acacia7 asserted that Multimedia "was not small at the time of the proposal submission because the managing venturer upon whom its size depends—NEI, was not small under the applicable size standard at the time [Multimedia] submitted its proposal." AR 1935. Acacia7 argued that, based on publicly available data, "[t]he receipts of NEI and its affiliates" exceeded the applicable size standard for the procurement. *Id.*

On September 5, 2024, the Area Office issued a size determination finding that Multimedia was an eligible small business for the procurement. AR 5395-413. With respect to Acacia7's argument regarding NEI and its affiliates, the Area Office noted that "NEI acknowledges [] having multiple other active joint ventures," AR 5401, and that "[o]f the seventeen (17) active joint ventures in which NEI has been involved . . . only six have been awarded contracts and have reported economic activity," AR 5403. In sum, the Area Office concluded that NEI had properly calculated its receipts and that NEI fell below the applicable size standard. AR 5403-04. In making its determination, the Area Office also reviewed Multimedia's JVA for the required provisions under 13 CFR § 125.8(b) and (c) and concluded that Multimedia's JVA "complies with requirements." AR 5404-13. With respect to the requirements under 13 C.F.R. § 125.8(b)(2)(ii), the Area Office stated the following:

> The JVA is required to designate the small business as the managing venturer of the joint venture, and designate a named employee of the small business managing venturer as the manager with ultimate responsibility for performance of the contract. This individual is referred to as the "Responsible Manager". Here, the document designates NEI as the managing venturer and NEI employee Stacy Gutierrez as the "Responsible Manager".
>
> Accordingly, [the Area Office] finds that the document meets the requirements under 13 CFR § 125.8(b)(2)(ii).

AR 5408.

---

[3] WEIS reincorporated under various names during the procurement. AR 5396.

On September 19, 2024, Acacia7 appealed the Area Office's size determination to OHA. AR 5420-26. Acacia7 asserted that "the Area Office inexplicably ignored several well-supported key allegations in Acacia[7]'s size protest, which resulted in the Area Office ignoring NEI's participation in twelve different joint ventures, and NEI's affiliation with at least one other entity." AR 5420. Acacia7 did not initially challenge the Area Office's assessment of Multimedia's JVA. *See* 5420-24. However, on October 4, 2024, Acacia7 filed a supplemental pleading with OHA arguing that the Area Office's determination "that the [JVA] between NEI and Wood does meet the requirements of 13 C.F.R. § 125.8(b)-(c) . . . was clearly erroneous." AR 5614. Acacia7 argued that the JVA violated the requirement in § 125.8(b) "that the protégé be a managing venturer that 'is responsible for controlling the day-to-day management and administration of the contractual performance of the joint venture.'" AR 5614-15 (quoting 13 C.F.R. § 125.8(b)(2)(ii)(A)). Thus, Acacia7 contended that "the [JVA] does not qualify for SBA's exception for affiliation between joint venturers." AR 5615.

On January 22, 2025, OHA reversed the Area Office's size determination. AR 5690-705. OHA found that "[t]he Area Office properly included NEI's proportion of annual receipts for the six active joint ventures when it calculated NEI's receipts" and "concluded that NEI's receipts were within the size standard." AR 5702. However, with respect to the Multimedia JVA, OHA concluded that it "does not meet the regulatory requirements of 13 C.F.R. § 125.8(b)(2)(ii)," AR 5704, which require that "[t]he Managing Venturer is responsible for day-to-day management and administration of contract performance," AR 5703. Specifically, OHA determined that, under the Multimedia JVA, "[t]he Responsible Manager authority is [] subject to the Executive Committee's direction, and WEIS has negative control over the Executive Committee, whose decisions must be unanimous." AR 5704. OHA further determined that "the Project Manager is given an equal authority to manage the contract, with no mechanism for resolving disputes between the two managers." *Id.* Because "[t]he JVA [] gives WEIS significant negative control over the contract," OHA concluded that "[t]he Responsible Manager simply does not have the control over the joint venture and contract performance the regulation requires." *Id.* In sum, OHA held that Multimedia "is not eligible to use the exception to a finding of affiliation at 13 C.F.R. § 121.103(h)(2)(ii)," and "[a]ccordingly, [Multimedia] is not an eligible small business for this procurement." AR 5705.

After OHA issued its decision, Multimedia filed the instant bid protest on February 19, 2025. Compl. [ECF 1]. On March 5, 2025, the Government filed an unopposed motion for a voluntary remand to OHA "to reconsider [its] decision." Def.'s Consent Mot. [ECF 22] at 1. The Court granted the motion and remanded the case to OHA. Remand Order [ECF 23].

On May 12, 2025, OHA issued its remand decision. AR 5796-817. Therein, OHA reaffirmed its initial decision that the "JVA fails to comply with the regulation at 13 C.F.R. § 125.8(b)(2)(ii)" and, therefore, concluded that Multimedia is ineligible for the procurement. AR 5816. OHA summarized its conclusion as follows:

> The regulation thus requires that the joint venture be controlled by the small business, and that an employee of the small business, often its principal and President, be the Responsible Manager, who is to control the day-to-day management and administration of the

5

> contract and have ultimate responsibility for contract performance. Here, WEIS has failed to make the cession of control required by the regulation. The Responsible Manager must share authority with a Program Manager, and both are subordinate to the Executive Committee. The unclear lines of authority will, in the event of dispute, go to a professional arbitrator for clarification. This is not permitted by the regulation.

*Id.* On May 19, 2025, the parties filed a joint status report apprising the Court that Multimedia "believes further litigation is necessary" and proposing a briefing schedule for cross-MJARs. Joint Status Report [ECF 26]. Shortly thereafter, the Court issued a scheduling order adopting the proposed schedule. Order [ECF 28]. The parties' respective cross-MJARs are fully briefed, [ECFs 31, 33-37], and the Court held oral argument on August 21, 2025, [ECF 32].

## II.    LEGAL STANDARD

The Tucker Act grants this Court "jurisdiction to render judgment on an action by an interested party objecting to . . . the award of a contract or any alleged violation of statute or regulation in connection with a procurement." 28 U.S.C. § 1491(b)(1). This jurisdictional grant extends to "OHA decisions made 'in connection with a procurement or a proposed procurement' under the third prong of § 1491(b)(1) as part of a bid protest." *22nd Century Techs., Inc. v. United States*, 57 F.4th 993, 998 (Fed. Cir. 2023).

"Bid protests are generally decided on cross-[MJARs], pursuant to Rule 52.1 of the Rules of the U.S. Court of Federal Claims ('RCFC')." *KL3, LLC v. United States*, 176 Fed. Cl. 657, 666 (2025). This type of motion is "an appropriate vehicle to scrutinize an agency's procurement actions because such cases typically involve interpretation of contract documents or regulations, thereby presenting no disputed issues of material fact." *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1352 (Fed. Cir. 2004). On such a motion, the Court "make[s] factual findings from the record evidence as if it were conducting a trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005). The requisite inquiry for the Court is, "'given all the disputed and undisputed facts in the administrative record, whether the plaintiff has met the burden of proof to show that the [challenged action or] decision was not in accordance with the law.'" *ELB Servs., LLC v. United States*, 172 Fed. Cl. 233, 242 (2024) (alteration in original) (quoting *Martinez v. United States*, 77 Fed. Cl. 318, 324 (2007)).

"The Administrative Procedure Act ('APA') supplies the standard of review in bid protests." *Oak Grove Techs., LLC v. United States*, 116 F.4th 1364, 1374 (Fed. Cir. 2024). Under the APA, the court may set aside an agency's decision that is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Banknote Corp. of Am., Inc.*, 365 F.3d at 1350. "Under an arbitrary or capricious standard, the reviewing court should not substitute its judgment for that of the agency, but should review the basis for the agency decision to determine if it was legally permissible, reasonable, and supported by the facts." *Glenn Def. Marine (Asia), PTE Ltd. v. United States*, 105 Fed. Cl. 541, 559 (2012), (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)), *aff'd*, 720 F.3d 901 (Fed. Cir. 2013). Nevertheless, a court may set aside

6

an agency's procurement decision if it lacked a rational basis or if the procedure involved a regulatory violation. *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1332 (Fed. Cir. 2001). A procurement decision is rational if "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Impresa*, 238 F.3d at 1333 (internal quotation marks omitted) (quoting *Latecoere Int'l, Inc. v. United States Dep't of Navy,* 19 F.3d 1342, 1356 (11th Cir. 1994)). The protestor has the burden to show that the agency's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Glenn Def. Marine (Asia), PTE Ltd. v. United States*, 720 F.3d 901, 907 (Fed. Cir. 2013). In addition, the protestor must show that the agency's error was prejudicial. *Sys. Stud. & Simulation, Inc. v. United States*, 22 F.4th 994, 998 (Fed. Cir. 2021) (citing *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009)).

### III. ANALYSIS

Multimedia presents three challenges to the OHA decision. First, Multimedia argues that OHA improperly reviewed the Area Office's decision *de novo* rather than under the proper "clear error" standard of review. Pl.'s Mem. in Support of MJAR [ECF 31-1] at 13-15.[4] Second, Multimedia argues that OHA's decision is contrary to the plain language of 13 C.F.R. § 125.8(b)(2)(ii). *Id*. at 15-22. Third, Multimedia argues that OHA's decision is arbitrary and capricious because it does not provide a sufficiently reasoned explanation and fails to address the relevant evidence. *Id*. at 22-28. As explained below, the Court finds that OHA applied the proper standard of review, adhered to 13 C.F.R. § 125.8(b)(2)(ii), and provided a rational basis for its decision.

#### A.     OHA Applied the Proper Standard of Review

Multimedia states "that the Area Office determined that [Multimedia] is an eligible small business joint venture . . . because NEI is small and because the JVA complies with all requirements under 13 C.F.R. §§ 125.8(b) and (c)" and that "[i]n order for OHA to reverse [], it must have had a definite and firm conviction that the Area Office erred in making key findings of fact or law." [ECF 31-1] at 15. Multimedia contends that "a plain reading of the [d]ecision reveals that OHA did not; it merely had questions regarding potential ambiguity in the JVA and attempted to re-weigh the JVA and review it *de novo*, rather than determine whether the Area Office made a mistake as it pertains to key factual or legal findings." *Id.* According to Multimedia, "[t]he mere fact that OHA may have decided this case differently does not entitle OHA to reverse the Area Office." *Id.*

The Court finds that OHA applied the proper standard of review. On appeal, OHA reviews the Area Office's size determination to decide whether it "was based on clear error of fact or law." 13 C.F.R. § 134.314. Under this standard of review, "[a] finding is clearly erroneous when[,] although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 622 (1993) (internal quotation marks omitted) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). "Thus, review under the 'clearly erroneous' standard is

---

[4] All page numbers in the parties' briefs refer to the page numbers generated by the CM/ECF system.

significantly deferential" to an Area Office's determination. *Id.* at 623. To that end, "OHA examines the record to ascertain whether the [Area Office]'s findings are 'plausible in light of the record viewed in its entirety.'" *Daniels Bldg. Co., Inc. v. United States*, 175 Fed. Cl. 767, 774 (2025) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985)).

Here, OHA properly stated in its decision that "clear error of fact or law" is the applicable standard of review. AR 5702, 5812. In applying this standard, OHA reviewed the evidence in the record—namely the Area Office's size determination and the Multimedia JVA—and found that the Area Office's determination that the JVA complied with the requirements of 13 CFR § 125.8(b)(2)(ii) was "based upon an error of fact or law." AR 5705, 5817. As opposed to improperly reweighing the JVA—as Multimedia alleges—OHA identified specific terms in the JVA that the Area Office either erroneously analyzed or entirely failed to consider. OHA acknowledged that the JVA contained terms that "create[d] the position of Responsible Manager" and "provide[d] that the Responsible Manager is to administer the ordinary day-to-day business of the Joint Venture." AR 5815. However, OHA identified specific terms in the JVA—left unaddressed by the Area Office—that gave WEIS improper control over contract performance. OHA specifically found that the JVA's establishment of an Executive Committee that "is responsible for delegating specific powers to the Responsible Manager," AR 5816, and creation of a Program Manager who is "on equal footing" with the Responsible Manager, AR 5815, rendered it non-compliant with 13 C.F.R. § 125.8(b)(2)(ii), AR 5816. In other words, due to these features of the JVA, OHA concluded that WEIS had failed to "cede control" to NEI as required by the regulation and that the Area Office's determination that the JVA was compliant was not plausible. AR 5816. Thus, OHA held that the Area Office "erred in finding [the Multimedia JVA] compliant." AR 5704. Contrary to Multimedia's assertion, the record indicates that OHA held a definite and firm conviction that the Area Office clearly erred in its assessment of the Multimedia JVA, and that OHA applied the proper standard of review in reversing the Area Office's determination.[5]

### B.   The OHA Decision Adheres to 13 C.F.R. § 125.8(b)(2)(ii)

Multimedia asserts that "OHA applied a heightened and incorrect standard of what 13 C.F.R. § 125.8(b)(2)(ii) requires, and OHA's interpretation is inconsistent with the plain meaning of the same." [ECF 31-1] at 15-16. Multimedia states that the governing regulation "simply requires a [JVA] to designate a small business as the managing venturer and an employee of the small business as the responsible manager, with ultimate responsibility for performance of the contract . . . [and that, o]n its face, [Multimedia's] JVA satisfies these

---

[5] Multimedia argues "that OHA did not have a definite and firm conviction that the Area Office erred, [because] OHA complained that the JVA was potentially ambiguous" with respect to control and the authority between the Responsible Manager and Program Manager. [ECF 35] at 8; *see* [ECF 31-1] at 15 (arguing that OHA "merely had questions regarding potential ambiguity in the JVA and attempted to re-weigh the JVA and review it *de novo*, rather than determine whether the Area Office made a mistake as it pertains to key factual or legal findings"). The Court is not persuaded. The ambiguity OHA identified in the JVA does not relate to the strength of OHA's conviction that the Area Office erred. Rather, the ambiguity is part of the reason why OHA found that WEIS had failed to make the necessary cessation of control under the JVA and that the Area Office erred when it determined that the JVA complied with 13 C.F.R. § 125.8(b)(2)(ii). *See* AR 5816 (concluding that "[t]he unclear lines of authority" between the Responsible Manager, Program Manager, and Executive Committee show a failure to cede control as required by the regulation).

requirements." *Id*. at 17. According to Multimedia, "[d]espite complying with the unambiguous language of 13 C.F.R. § 125.8(b)(2)(ii) . . . OHA irrationally determined that these provisions of the JVA were '*pro forma*' and found that NEI did not have 'independent control of all aspects of the joint venture, as required by the regulation.'" *Id.* Multimedia argues that "[w]hile the plain language of 13 C.F.R. § 125.8(b)(2)(ii) provides that the managing venturer must be responsible for controlling the day-to-day management and administration of contractual performance of the joint venture, there is absolutely no requirement that such control must be 'independent,'" *id.*, and that "[t]o require total, independent control over 'all aspects of the joint venture' is contrary to the plain language of the regulation," *id.* at 18.

The Court finds that OHA rationally determined that Multimedia's JVA did not comply with 13 C.F.R. § 125.8(b)(2)(ii). At the time of issuance of the solicitation, the regulation provided in relevant part as follows:

> (2) Every joint venture agreement to perform a contract set aside or reserved for small business between a protégé small business and its SBA–approved mentor authorized by § 125.9 or § 124.520 of this chapter must contain a provision:
>
> (ii) Designating a small business as the managing venturer of the joint venture, and designating a named employee of the small business managing venturer as the manager with ultimate responsibility for performance of the contract (the "Responsible Manager").
>
> (A) The managing venturer is responsible for controlling the day-to-day management and administration of the contractual performance of the joint venture, but other partners to the joint venture may participate in all corporate governance activities and decisions of the joint venture as is commercially customary.

13 C.F.R. § 125.8(b)(2)(ii)(A). In its decision, OHA analyzed whether Multimedia's JVA complied with these requirements. AR 5812-16. OHA stated that "SBA's regulatory scheme [] requires that in a joint venture between a small business and its large mentor firm the small business must be in control of the day-to-day management and administration of the joint venture, and of the performance of the contract." AR 5814. OHA further explained that "[i]t is the Responsible Manager who, on behalf of their employer, the Managing Venturer, is to have control over the day-to-day operations of the joint venture, and the performance of the contract." *Id.* OHA acknowledged, however, that "[t]he regulation does permit the minority member to participate in corporate governance as is commercially customary, and to have negative control over certain decisions if those would be commercially customary for a [JVA] for a government contract outside of SBA's programs." *Id.* These statements are supported by the plain text of the regulation. *Def. Integrated Sols., LLC v. United States*, 165 Fed. Cl. 352, 368 (2023) (citing *Breland v. McDonough*, 22 F.4th 1347, 1353 (Fed. Cir. 2022)) ("When the text is unambiguous, the court need only read and apply the plain language of the regulation."). Indeed, the regulation

9

requires that the JVA contain a provision that designates the protégé concern "as the managing venturer of the joint venture," 13 C.F.R. § 125.8(b)(2)(ii), and that the managing venturer be "responsible for *controlling* the day-to-day management and administration of the contractual performance of the joint venture," *id.* § 125.8(b)(2)(ii)(A) (emphasis added). Furthermore, as an exception to the requirement that the protégé firm, as managing venturer, control contractual performance, the regulation allows the mentor concern to "participate in all corporate governance activities and decisions of the joint venture as is commercially customary." *Id.*

Contrary to Multimedia's argument that OHA misinterpreted the regulation to require that the JVA cede total control over all aspects of the joint venture to NEI, *see* [ECF 31-1] at 18, OHA found that the JVA was noncompliant due to its failure to provide NEI with sufficient control over contract performance. While OHA acknowledged that the JVA designated NEI's "Managing Partner and President, Ms. Gutierrez, as Responsible Manager," AR 5704, OHA was concerned that the JVA gave "considerable control to WEIS," *id.* Specifically, OHA stated that "[a]n Executive Committee is created above the Responsible Manager," *id.*, and that the JVA "creates a position unknown to the regulation of Program Manager," *id.* OHA then analyzed the authority of the Executive Committee and the Program Manager in relation to the Responsible Manager under the terms of the JVA to reach its decision.

OHA found that WEIS had negative control over the Executive Committee because it "has two members, one from each concern, and its decisions must be unanimous." AR 5704. According to OHA, this was problematic because the JVA provided that the "Executive Committee is responsible for delegating specific powers to the Responsible Manager and the Program Manager." AR 5816. In OHA's view, this made the Executive Committee responsible for defining the Responsible Manager's role, "rather than [] the manager [being] in charge of contract administration." *Id.* This finding by OHA is supported by the terms of the JVA. *See* AR 564 (stating that each party has one vote and that decisions of the Executive Committee shall be unanimous), AR 565 (stating that "[t]he Responsible Manager and Program Manager shall be delegated the responsibility for the practical execution and carrying out of his or her portion of the Services and shall have such specific powers as the Executive Committee may . . . delegate"). Consequently, OHA concluded that "[t]he Responsible Manager['s] authority is [] subject to the Executive Committee's direction," AR 5704, and that this provided WEIS with "significant negative control over the contract," *id.*

Additionally, OHA found that the Responsible Manager's authority over contract performance was further diluted because the JVA established "another position, unknown to the regulation, of Program Manager," AR 5815, with "equal authority to manage the contract [and] no mechanism for resolving disputes between the two managers," AR 5704. OHA acknowledged that the JVA tasked the Responsible Manager with the day-to-day management and administration of the joint venture. AR 5815 (stating that "[t]he JVA provides that the Responsible Manager is to administer the day-to-day business of the Joint Venture . . . [and] grant[s] to the Responsible Manager [the] 'day-to-day' management of [Multimedia]"). However, OHA took issue with how the JVA did "not include a clear distinction as to the roles of the Responsible Manager as opposed to the Project Manager" regarding contract performance. *Id.* Specifically, OHA identified terms in the JVA providing that the Responsible Manager and Program Manager "review solicitations together, jointly lead negotiations, and manage the

10

project together." *Id.* These findings are supported by the terms of the JVA. *See* AR 562 ("Each additional [Request for Proposal] and proposal issued under the Contract will be reviewed by . . . the Responsible Manager . . . and . . . the Program Manager . . . ."), AR 565 ("Management of the Project shall be performed by the Responsible Manager and the Program Manager . . . ."), *Id.* ("The Responsible Manager and Program Manager shall jointly lead negotiations for the Contract and all subsequent Task Orders."). Thus, despite the JVA containing terms that tasked the Responsible Manager with the day-to-day management and administration of Multimedia, OHA concluded that "[t]he Responsible Manager simply does not have the control over the joint venture and contract performance [that] the regulation requires." AR 5704.

In sum, OHA explained that the regulation requires that the Responsible Manager "control the day-to-day management and administration of the contract and have ultimate responsibility for contract performance." AR 5816. Because the JVA requires that "[t]he Responsible Manager must share authority with the Program Manager, and [that] both are subordinate to the Executive Committee . . . WEIS [] failed to make the cessation of control required by the regulation." *Id.* The Court finds that OHA's decision comports with 13 C.F.R. § 125.8(b)(2)(ii) and has a rational basis.[6] *Safeguard Base Operations, LLC v. United States*, 989 F.3d 1326, 1343 (Fed. Cir. 2021) (quoting *PAI Corp. v. United States*, 614 F.3d 1347, 1351 (Fed. Cir. 2010)) ("[P]rocurement decisions are subject to a 'highly deferential rational basis review' . . . [a]pplying this highly deferential standard, the court must sustain agency action unless the action does not 'evince[] rational reasoning and consideration of relevant factors.'") (alterations in original)); *Team Waste Gulf Coast, LLC v. United States*, 135 Fed. Cl. 683, 687 (2018) ("Reversal is limited to those situations where OHA has acted irrationally or has erroneously applied relevant procurement law.").

---

[6] The version of 13 C.F.R. § 125.8(b)(2)(ii)(A) that was effective on June 21, 2022, the date of the solicitation, stated: "The managing venturer is responsible for controlling the day-to-day management and administration of the contractual performance of the joint venture, but other partners to the joint venture may participate in all corporate governance activities and decisions of the joint venture as is commercially customary." On May 30, 2023, this section was amended to include the following language:

> The joint venture agreement may not give to a non-managing venturer negative control over activities of the joint venture, unless those provisions would otherwise be commercially customary for a joint venture agreement for a government contract outside of SBA's programs. A non-managing venturer's approval may be required in, among other things, determining what contract opportunities the joint venture should seek and initiating litigation on behalf of the joint venture.

In both OHA's initial and remand decisions, OHA referenced the additional language contained in the amended regulation. *See* AR 5703, 5813. However, "[r]egulations are only applied retroactively if their language so requires." *Kellogg Brown & Root Servs., Inc. v. United States*, 109 Fed. Cl. 288, 302 (2013) (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 264 (1994)). Here, OHA's reference to the amended regulation does not necessarily render its determination arbitrary or capricious. At bottom, OHA determined that the JVA failed to cede sufficient control over contract performance to NEI and that, therefore, the JVA failed to meet the applicable regulatory requirements. AR 5704, 5816. This determination is valid under either version because they both require that the managing venturer "control[] the day-to-day management and administration of the contractual performance of the joint venture." *Compare* 13 C.F.R. § 125.8(b)(2)(ii)(A) (revised November 16, 2020) *with id.* (revised May 30, 2023).

### C. OHA Considered the Relevant Evidence

Multimedia argues that "OHA further erred because it failed to address the relevant evidence with respect to the sufficiency of [Multimedia's] JVA and did not read the JVA as a whole." [ECF 31-1] at 23. Multimedia contends that "OHA's conclusions regarding [WEIS's] purported control over [Multimedia] are demonstrably wrong." *Id.* In Multimedia's view, OHA makes three flawed findings pertaining to the JVA: (1) "that the Responsible Manager and Program Manager are on equal footing and have apparently equal authority;" *id.* at 23 (internal quotation marks omitted), (2) that it "provides [the] Responsible Manager's role will be defined by the Executive Committee, rather than be the manager in charge of contract administration," *id.* at 25 (internal quotation marks omitted and alteration in original), and (3) that it creates the potential for conflict between NEI and WEIS, rather than leave NEI in control, *id.* at 27.

With respect to each of the alleged flawed findings, the Court finds that OHA considered the relevant evidence and provided a rational basis for its conclusion. First, Multimedia states that the JVA "confirms that the Responsible Manager and Program Manager are not equal." [ECF 31-1] at 24 (internal quotation marks omitted). To support its position, Multimedia points to a section of the JVA that establishes NEI as the Managing Venturer and Stacy Gutierrez as the Responsible Manager with ultimate responsibility for contract performance and administration of the ordinary day-to-day business of the joint venture. *Id.* However, while the OHA acknowledged that the JVA made these designations as required by the regulations, it nevertheless also found that the JVA afforded WEIS significant control over contract performance. *See* AR 5704, 5815. In doing so, OHA referenced other sections of the JVA to conclude that the JVA "puts NEI's Responsible Manager on equal footing with WEIS's Program Manager." *See* AR 5815 (citing sections of the JVA showing the shared authority of the Responsible Manager and Program Manager).

Next, Multimedia argues that "OHA ignored . . . the role of the Executive Committee [in finding] that it interferes with or prevents NEI and Ms. Gutierrez from controlling the day-to-day management and administration of the contractual performance of [Multimedia]." [ECF 31-1] at 25. Multimedia contends that "<u>none</u> of the powers of the Executive Committee interfere with NEI's or Ms. Gutierrez's control of the day-to-day management or administration of contract performance." *Id.* According to Multimedia, OHA incorrectly found that the JVA provides that the Responsible Manager's role will be defined by the Executive Committee. *Id.* Nonetheless, OHA's conclusion is supported by the terms of the JVA. OHA found that the Executive Committee has the authority to define the Responsible Manager's role because the Executive Committee is responsible for delegating powers to the Responsible Manager for contract performance. AR 5704 ("Management of the Project will be performed by the Responsible Manager and the Program Manager together. They shall be delegated responsibility for execution of the contract and shall have such specific powers as the Executive Committee may, from time-to-time delegate."), AR 5816 ("[T]he Executive Committee is responsible for delegating specific powers to the Responsible Manager and the Program Manager."). OHA further found that WEIS may exercise control over the Executive Committee because of its one member, one vote structure and the requirement that Executive Committee decisions be unanimous. *Id.* These findings are supported by the JVA. *See* AR 565 ("Management of the Project shall be performed by the Responsible Manager and the Program Manager . . . ."), *id.* ("The Responsible Manager

and Program Manager shall be delegated the responsibility for the practical execution and carrying out of his or her portion of the Services and shall have such specific powers as the Executive Committee may, from time to time, delegate . . . ."), AR 564 (stating that Executive Committee decisions shall be unanimous and shall be made with each party having one vote).

Finally, Multimedia argues that OHA incorrectly found "that if some 'ambiguity in the JVA leads to any conflict between the Responsible Manager (NEI) and the Project Manager (WEIS), NEI cannot depend upon being able to assert its authority to control [Multimedia's] day-to-day operations'" and that "it must go first to the Executive Committee, where WEIS has a veto, and then take its chances on arbitration." [ECF 31-1] at 27 (quoting AR 5816). Multimedia emphasizes that, under the JVA, the Responsible Manager "has ultimate responsibility as between the Program Manager and herself, meaning she has the ability to assert authority to control [Multimedia's] day-to-day operations." *Id.* (internal quotation marks omitted). Yet again, OHA's finding is supported by the terms of the JVA. Despite the JVA providing "the Responsible Manager with ultimate responsibility for performance of the Contract," AR 564-65, it also provides the Responsible Manager and Program Manager with shared responsibilities relating to contract performance. The JVA provides that "[m]anagement of the Project shall be performed by the Responsible Manager and the Program Manager," AR 565, that they will both review Requests for Proposals and proposals issued under the contract, AR 562, and that they will jointly lead negotiations, AR 565. Thus, it is possible—if not probable—that there will be conflicting positions on matters relating to contract performance. In such event, the JVA provides that "any dispute or difference arising out of or relating to the Contract, the Task Orders or otherwise in connection with this Agreement shall, if not resolved by the Executive Committee, be resolved by good faith negotiations between . . . each Party." AR 573. If good faith negotiation fails, the JVA provides that the dispute will be referred to arbitration or mediation. *Id.* Based on these JVA terms, OHA rationally concluded as follows:

> [I]f the ambiguity in the JVA leads to any conflict between the Responsible Manager (NEI) and the Project Manager (WEIS), NEI cannot depend upon being able to assert its authority to control [Multimedia's] day-to-day operations. Rather, it must go first to the Executive Committee, where WEIS has a veto, and then take its chances on arbitration. This process is, at best, drawn out in a way that would not be conducive to effective contract administration. At worst, NEI will lose the control of the joint venture the regulation requires it to have.

AR 5816. In sum, Multimedia has failed to demonstrate that OHA's findings were arbitrary or capricious. Because OHA's decision has a rational basis for each of its findings and is supported by the record evidence, the Court will not disturb it. *Savantage Fin. Servs., Inc. v. United States*, 595 F.3d 1282, 1286 (Fed. Cir. 2010) (quoting *Advanced Data Concepts, Inc. v. United States,* 216 F.3d 1054, 1058 (Fed. Cir. 2000)) (stating that the Court "must sustain an agency action unless the action does not 'evince[] rational reasoning and consideration of relevant factors'").

## IV.     CONCLUSION

Accordingly, Multimedia's MJAR [ECF 31] is **DENIED**, and the government's and Acacia7's cross-MJARs [ECFs 33, 34] are **GRANTED**. "Because proving success on the merits is a necessary element for a permanent injunction," *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 999 (Fed. Cir. 2018), and Multimedia has not succeeded on the merits, no permanent injunctive relief is warranted. The Clerk is **DIRECTED** to enter judgment accordingly.

Some information contained in this Opinion and Order may be considered protected information subject to the Protective Order entered on February 21, 2025. [ECF 12]. Accordingly, the Opinion is filed **UNDER SEAL**. The parties **SHALL CONFER AND FILE on or before September 17, 2025**, a joint status report that: identifies the information, if any, that the parties contend should be redacted; explains the basis for each proposed redaction; and includes an attachment of the proposed redactions for this Opinion and Order.

**IT IS SO ORDERED.**

                                                           s/ Thompson M. Dietz
                                                           THOMPSON M. DIETZ, Judge